**BRASSY et al. v. PERMANENTE METALS CORPORATION.**

No. 11443.

Circuit Court of Appeals, Ninth Circuit.

Sept. 4, 1947.

Rehearing Denied Oct. 30, 1947.

**526**

Harold C. Faulkner, Czar S. Winters, Wilbur F. Mathewson, and Melvin, Faulkner, Sheehan & Wiseman, all of San Francisco, Cal., for appellant.

Gordon Johnson, Lauffer T. Hayes, and Thelen, Marrin, Johnson & Bridges, all of San Francisco, Cal., for appellee.

Before GARRECHT, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

Appellant and Robert P. Easley, partners doing business as Easley & Brassy, brought an action against appellee.[1] Easley died while the action was pending. Thereafter the action was prosecuted by appellant.[2] Appellee filed an answer containing a counterclaim, to which appellant filed a reply. The action was tried by the court without a jury. The court found the facts, stated its conclusions and entered judgment that appellant take nothing, and that appellee recover, on its counterclaim, $4,769.89. This appeal is from that judgment.

Appellant and Easley made three agreements with appellee—an agreement dated January 16, 1943, entitled "Rental-Purchase Agreement No. PD-420," hereafter called agreement A; an agreement dated May 4, 1943, entitled "Rental-Purchase Agreement No. PD-482," hereafter called agreement B; and an agreement dated November 16, 1943, entitled "Change Order No. 1," hereafter called agreement C.

By agreement A, appellant and Easley leased to appellee a Lima crane, model 602, serial No. 500, hereafter called crane A, and appellee agreed to pay appellant and Easley a rental of $1,050 for the first 240 hours in each month or part thereof during the term of the lease of crane A and a further rental of $2.19 for each hour of actual operation of crane A in excess of 240 hours in any such month or part thereof.

Paragraph 2 of agreement A provided: "The term of this lease shall begin on the delivery of the leased property [crane A] to the Company [appellee] * * * and shall continue until canceled." Crane A was delivered to appellee on January 23, 1943. The lease was not canceled.

Paragraph 8 of agreement A provided: "It is agreed that the present value of the leased property is $23,948. * * * If the total amount of rental paid hereunder by the Company to the Owner [appellant and Easley] shall at any time equal said present value of the leased property, the United States Maritime Commission[3] shall thereupon become the owner of the leased property. If the United States Maritime Commission shall become the owner of the leased property under the terms of this paragraph, the Owner [appellant and Easley] shall execute and deliver to the Company all necessary documents to effect a complete transfer of title, free and clear of all liens and encumbrances, to the United States Maritime Commission."

---

[1] Appellant and Easley were citizens of California doing business therein. Appellee was a Delaware corporation doing business in California.

[2] See §§ 2423–2437 of the California Civil Code.

[3] Crane A was to be and was used by appellee in performing work which Richmond Shipbuilding Corporation, as contractor, and appellee, as subcontractor, had agreed to perform for the United States. In contracting with Richmond Shipbuilding Corporation, the United States acted by and through the Maritime Commission. Agreement A was approved by the Maritime Commission and was, in part at least, an agreement for the benefit of the United States.

Paragraph 9 of agreement A provided: "The Owner warrants that the leased property upon delivery to the Company shall be in good operating condition. If the leased property is not in good operating condition when received by the Company because of defects consisting of broken, defective or badly worn parts even though said defects are not known at the time of original delivery and are not discovered until after the leased property has been used by the Company, the Owner shall reimburse the Company for the cost of any repairs necessary to correct such defects if such repairs are made by the Company or shall make necessary repairs upon request by the Company."

Paragraph 16 of agreement A provided: "Owner [appellant and Easley] represents, warrants and certifies that the rental or rates and/or the stated value or values established herein [4] do not exceed the maximum rental or rates and/or price or prices chargeable and payable under the regulations of the Office of Price Administration and are not in excess of the maximum and are not less than the minimum chargeable and payable under any other applicable State or Federal legislation or regulations. Owner agrees to reimburse and/or pay to Company [appellee] or its assigns all moneys paid hereunder in excess of the maximum rental or rates and/or price or prices chargeable and payable under any such legislation or regulations and all fines and penalties ordered paid to the Company under such legislation or regulations because of any violations thereof."

Between January 23, 1943, and June 27, 1944, appellee paid appellant and Easley, as rental under agreement A, $14,880.69 and tendered to them and deposited to their credit, as such rental, $736.56, making a total of $15,617.25.

By agreement B, appellant and Easley leased to appellee a Lima crane, model 701, serial No. 490, hereafter called crane B, and appellee agreed to pay appellant and Easley a rental of $1,700 for the first 240 hours of actual operation of crane B in each month or part thereof during the term of the lease of crane B and a further rental of $3.54 for each hour of actual operation of crane B in excess of 240 hours in any such month or part thereof.

Paragraph 2 of agreement B provided: "The term of this lease shall begin on the delivery of the leased property [crane B] to the Company [appellee] and shall continue for a period not to exceed six (6) months." Crane B was delivered to appellee on May 22, 1943. Agreement C modified agreement B by extending the term of the lease to February 20, 1944. Paragraph 8 of agreement B stated that crane B's value was $24,000. Otherwise, paragraphs 8, 9 and 16 of agreement B were similar to paragraphs 8, 9 and 16 of agreement A.[5]

Between May 22, 1943, and January 31, 1944, appellee paid appellant and Easley, as rental under agreement B, $19,675.36 and expended for their account $2,865.70 for equipment—$2,532.06 for a heavy lift boom and $333.64 for an oil filter—placed on and used in connection with crane B. On September 14, 1944, appellee tendered to appellant and Easley and deposited to their credit, as rental under agreement B, $2,098.07.[6]

This action was commenced on March 19, 1945. The complaint was in four counts. Count 1 alleged that appellee had crane A in its possession, had paid appellant and Easley, as rental under agreement A,[7] $14,880.69 and still owed them $9,067.31 (the difference between $14,880.69 and $23,948). Count 2 alleged that appellee had crane B in its possession and had wrongfully detained and was wrongfully

4 Crane A's stated value was $23,948. See paragraph 8 of agreement A.

5 What is said in footnote 3 regarding crane A and agreement A is true of crane B and agreement B.

6 The court found that appellee paid to or for the account of appellant and Easley, as rental under agreement B, $22,541.16, tendered to them and deposited to their credit, as such rental, $1,764.43 and expended for their account $2,865.80 for equipment—$2,532.16 for a heavy lift boom and $333.64 for an oil filter—placed on and used in connection with crane B, but the evidence showed the facts to be as we have stated them.

7 Copies of agreements A, B and C were attached to and made part of the complaint.

detaining it, and that, by such detention, appellant and Easley had been damaged in the sum of $36,803.87 and would be further damaged. Count 3 alleged that appellant and Easley's consent to agreement C was obtained by mistake. Count 4 alleged that the mistake mentioned in count 3 "was a mutual mistake of fact of plaintiffs [appellant and Easley] and defendant [appellee]."

The complaint prayed judgment against appellee, on count 1, for possession of crane A or for its value and for $9,067.31, with interest; on count 2, for possession of crane B or for its value, for $36,803.87 as damages for its detention prior to the filing of the complaint and for additional damages for its subsequent detention; on count 3, for rescission of agreement C; on count 4, for reformation of agreement C.

The Court held that MPR 136,[8] a regulation issued by the Office of Price Administration under § 2 of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 902, was applicable to agreements A and B; that the maximum price established for crane A by MPR 136 was $15,617.25; that the maximum price established for crane B by MPR 136 was $19,535.70; that title to cranes A and B had passed from appellant and Easley to the Maritime Commission; that appellant and Easley were not entitled to possession of either crane; that appellee owed appellant and Easley nothing; that they owed appellee $4,769.89; and that their consent to agreement C was not obtained by mistake, mutual or otherwise. Hence the judgment here appealed from.

Appellant contends that the court erred in holding that MPR 136 was applicable to agreements A and B. At all pertinent times, § 1390.3 of MPR 136 provided:

"§ 1390.3 Prohibition against sales at higher than maximum prices.—(a) On and after July 22, 1942, regardless of any contract, lease, or other obligation:

"(1) No person shall sell or deliver any machine or part and no person shall supply any machinery service at a price higher than the maximum price established by [MPR 136];

"(2) No person in the course of trade or business shall buy or receive any machine, part, or machinery service as a price higher than such maximum price: * * *

"(3) No person shall agree, offer, solicit, or attempt to do any of the acts prohibited in paragraphs (1) and (2)."[9]

This section made MPR 136 applicable to sales of machines and to agreements to sell machines. Agreements A and B were not sales, but were agreements to sell machines, namely, cranes A and B.[10] Hence the court correctly held that MPR 136 was applicable to agreements A and B.

Appellant concedes that, by agreements A and B, he and Easley agreed to sell cranes A and B, but says that they did not agree to sell the cranes at prices less than their stated values,[11] and that the court could not make such an agreement for them. Actually, by agreements A and B, appellant and Easley, in effect, agreed to sell the cranes at prices not exceeding their stated values and not exceeding the maximum prices established therefor by regulations issued by the Office of Price Administration.[12] MPR 136 was such a regulation. The court did not make or attempt to make any agreement for appellant and Easley.

Appellant contends that the court erred in holding that the maximum price established for crane A by MPR 136 was $15,617.25. On January 16, 1943, when agreement A was made, § 1390.11 of MPR 136 provided:

"§ 1390.11 Maximum prices; sales of second-hand machines and parts.—(a) For the purposes of this section, a second-hand machine or part is any machine or part which has previously been used.

"(b) The price for any rebuilt and guaranteed machine or part shall not be more than eighty-five percent of the highest maximum price to any class of purchasers

---

[8] Maximum Price Regulation No. 136, as amended.

[9] 7 F.R. 5047, 5048, 5362.

[10] See paragraphs 8 and 16 of agreements A and B.

[11] As said before, crane A's stated value was $23,948, and crane B's stated value was $24,000.

[12] See paragraphs 8 and 16 of agreements A and B.

for the nearest equivalent new machine or part f. o. b. factory, whether established by [MPR 136] or by any other price schedule or maximum price regulation or order issued by the Office of Price Administration. A 'rebuilt and guaranteed' machine or part, is one in which all worn or missing components which should be replaced or repaired for satisfactory operation, if any, have been replaced or repaired, and which carries a binding guaranty of satisfactory operation for a period of not less than sixty days, and which is expressly invoiced as a rebuilt and guaranteed machine or part or its equivalent. * * *

"(c) The price for any other second-hand machine or part shall not be more than fifty-five percent of the highest maximum price to any class of purchasers for the nearest equivalent new machine or part f. o. b. factory, whether established by [MPR 136] or by any other price schedule or maximum price regulation or order issued by the Office of Price Administration." [13]

Crane A was a second-hand machine. The highest maximum price to any class of purchasers for the nearest equivalent new machine, f. o. b. factory, established by any price schedule or maximum price regulation or order issued by the Office of Price Administration was $28,395. Hence the maximum price established for crane A by MPR 136 was $15,617.25 (55% of $28,395) unless crane A was a rebuilt and guaranteed machine; and crane A was not a rebuilt and guaranteed machine unless it (1) was one in which all worn or missing components which should have been replaced or repaired for satisfactory operation had been replaced or repaired and (2) carried a binding guaranty of satisfactory operation for a period of not less than 60 days and (3) was expressly invoiced as a rebuilt and guaranteed machine or its equivalent.[14]

■ Crane A was a machine in which all worn or missing components which should have been replaced or repaired for satisfactory operation had been replaced or repaired, but it did not carry a binding guaranty of satisfactory operation for a period of not less than 60 days and was not expressly invoiced as a rebuilt and guaranteed machine or its equivalent. Hence the court correctly held that the maximum price established for crane A by MPR 136 was $15,617.25.

■ Paragraph 9 of agreement A, cited by appellant, was not a binding guaranty of satisfactory operation for a period of not less than 60 days; and even if it had been such a guaranty, it would have availed appellant nothing, as crane A was not expressly invoiced as a rebuilt and guaranteed machine or its equivalent.[15]

Appellant contends that the court erred in holding that the maximum price established for crane B by MPR 136, was $19,535.70. On May 4, 1943, when agreement B was made, § 1390.11 of MPR 136 provided:

"§ 1390.11 Maximum prices; sales of second-hand machines and parts.—(a) Definitions. For the purpose of this section

"(1) A 'second-hand machine or part' is any machine or part which has previously been used.

"(2) A 'rebuilt and guaranteed' machine or part is a machine or part (i) in which all worn or missing components which should have been replaced or repaired for satisfactory operation, have been replaced or repaired, (ii) which carries a binding written guaranty of satisfactory operation for a period of not less than 60 days and (iii) which is expressly invoiced as a rebuilt and guaranteed machine or part or its equivalent, and in addition, in those cases where the machine or part operates under power or pressure,[16] has been tested under power or pressure so as to prove that it has a substantially equivalent performance to that of a new machine or part. * * *

"(3) The 'new base price' * * * means the highest maximum price established by this or any other Regulation is-

---

[13] 7 F.R. 5050, 5665, 9730; 8 F.R. 12793.

[14] See § 1390.11 of MPR 136, as it existed on January 16, 1943.

[15] See § 1390.11 of MPR 136, as it existed on January 16, 1943.

[16] Crane B operated under power.

sued by the Office of Price Administration to any class of purchasers for the nearest equivalent new machine or part, f. o. b. manufacturer's plant.

"(b) Maximum price; rebuilt and guaranteed second-hand machines and parts. The maximum price for any rebuilt or guaranteed second-hand machine or part shall be * * *

"(1) 85% of the new base price for such machine or part * * *

"(c) Maximum price; second-hand machines and parts which are not rebuilt and guaranteed. The maximum price for any second-hand machine or part which is not rebuilt or guaranteed shall be * * *

"(1) 55% of the new base price for such machine or part * * *" [17]

Crane B was a second-hand machine. The new base price therefor—the highest maximum price established by any regulation of the Office of Price Administration to any class of purchasers for the nearest equivalent new machine, f. o. b. manufacturer's plant—was $35,320. Hence the maximum price established for crane B by MPR 136 was $19,426 (55% of $35,320) unless it was a rebuilt or guaranteed machine; and it was not a rebuilt or guaranteed machine unless it (1) was one in which all worn or missing components which should have been replaced or repaired for satisfactory operation had been replaced or repaired or (2) carried a binding written guaranty of satisfactory operation for a period of not less than 60 days and (3) was expressly invoiced as a rebuilt or guaranteed machine or its equivalent and (4) had been tested under power so as to prove that it had a substantially equivalent performance to that of a new machine.[18]

■ Crane B was a machine in which all worn or missing components which should have been replaced or repaired for satisfactory operation had been replaced or repaired, and it had been tested · under power so as to prove that it had a substantially equivalent performance to that of a

new machine, but it did not carry a binding written guaranty of satisfactory operation for a period of not less than 60 days and was not expressly invoiced as a rebuilt or guaranteed machine or its equivalent. Hence the maximum price established for crane B by MPR. 136 was $19,426, and the court erred in holding that it was $19,535.70. However, appellant was not prejudiced, but was benefited by this error.

Paragraph 9 of agreement B, cited by appellant, was not a binding written guaranty of satisfactory operation for a period of not less than 60 days; and even if it had been such a guaranty, it would have availed appellant nothing, as crane B was not expressly invoiced as a rebuilt or guaranteed machine or its equivalent.[19]

■ Appellant contends that the court erred in holding that title to cranes A and B had passed from him and Easley to the Maritime Commission. There is no merit in this contention. Title to crane A passed to the Commission on June 27, 1944, when the total amount of rental paid or tendered and deposited under agreement A equaled the maximum price ($15,617.25) established for crane A by MPR 136; and title to crane B passed to the Commission on January 31, 1944, when the total amount of rental paid under agreement B equaled and exceeded the maximum price ($19,426) established for crane B by MPR 136.[20]

·Appellant contends that the court erred in holding that he and Easley were not entitled to possession of cranes A and B, and in holding that appellee owed him and Easley nothing. This contention assumes that title to cranes A and B remained in appellant and Easley—an assumption which we have shown was incorrect.

Appellant contends that the court erred in holding that he and Easley owed appellee $4,769.89. As indicated above, appellee paid appellant and Easley or deposited to their credit, as rental under agreement B, $21,773.43 ($19,675.36 plus $2,098.07) and expended for their account $2,865.70 ($2,532.06 plus $333.64). The $21,773.43 ex-

[17] 8 F.R. 4476, 4477, 5746.

[18] See § 1390.11 of MPR 136, as it existed on May 4, 1943.

[19] See § 1390.11 of MPR 136, as it existed on May 4, 1943.

[20] See paragraphs 8 and 16 of agreements A and B.

ceeded by $2,347.43 the maximum price ($19,426) established for crane B by MPR 136. Appellant and Easley never refunded or repaid the $2,347.43 or the $2,865.70. Hence they owed appellee $5,213.13 ($2,-347.43 plus $2,865.70), and the court erred in holding that they owed appellee only $4,769.89. However, appellant was not prejudiced, but was benefited by this error.

Appellant contends that the court erred in finding that appellant and Easley's consent to agreement C was not obtained by mistake. The finding is supported by substantial evidence, is not clearly erroneous and should not be set aside.[21]

Judgment affirmed.

[21] See Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.